George N. Styliades, Esquire
LAW OFFICES OF GEORGE N. STYLIADES
P.O. Box 9
Moorestown, NJ 08057-0009
(856) 482-8877
gstyliades@styliadeslaw.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| **STENN DIRECT FUNDING DESIGNATED ACTIVITY COMPANY,** | : **CIVIL ACTION** |
| | : |
| | : |
| **Plaintiff,** | : |
| | : **No. 2:26-cv-_____(___)(___)** |
| **v.** | : |
| | : |
| **NPC GLOBAL CORPORATION,** | : **COMPLAINT** |
| | : |
| **Defendant.** | |

Plaintiff, Stenn Direct Funding Designated Activity Company, by and through its attorney, George N. Styliades, brings this Complaint against defendant, NPC Global Corporation, and in support thereof, avers as follows:

**PARTIES**

1.   Plaintiff is a designated activity company organized and existing under the laws of the Republic of Ireland, with a place

1

of business at Ground Floor, Two Dockland Central, Guild Street, North Dock, Dublin, Ireland.

2.    Defendant is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 100 Middlesex Avenue, Suite 2, Carteret, New Jersey.

3.    At all times material hereto, other persons or entities, not named as defendants herein, acted as participants in the events which are alleged herein, and committed acts in furtherance thereof.  Plaintiff reserves the right to amend the Complaint and name such persons or entities as parties in this litigation.

**JURISDICTION AND VENUE**

4.    Plaintiff brings this action against defendant under the provisions of 28 U.S.C. §1332, based upon the diversity of citizenship of the parties and the amount in controversy exceeds $75,000.00.

5.    Venue lies within the District of New Jersey under the provisions of 28 U.S.C. §1391 as defendant's principal place of business is in the State of New Jersey, and plaintiff and defendant ("the Parties") consented to this situs.

**ALLEGATIONS TO ALL CLAIMS FOR RELIEF**

6.    Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 5 of the preceding sections as if fully set forth at length herein.

7.    At all times material hereto, plaintiff was the lawful purchaser and the lawful assignee of certain accounts receivable owed by defendant to Dongguan Taihong Packaging Co., Limited, which supplied certain goods and/or materials to defendant during the time period on or about August 4, 2024 to October 19, 2024 ("the Accounts").

8.    Pursuant to the aforesaid assignment, defendant was required and/or otherwise obligated to tender payments to plaintiff in satisfaction of the Accounts.

9.    On or about October 30, 2025, and as a result of defendant's failure to comply with the then-existing payment obligations to plaintiff, the Parties entered into a written agreement ("the Agreement"), whereby the amounts owed on the Accounts were consolidated into a single debt and became the subject of a payment plan. A true and correct copy of the Agreement is attached hereto, made a part hereof, and marked as Exhibit A.

10.  At the time of the entry of the Agreement, plaintiff was owed by defendant the sum of $510,459.15 on the Accounts.

11.  As a result of the entry of the Agreement, the amount owed on the Accounts was discounted to $470,794.49, provided defendant tendered installment payments to plaintiff as set forth in the Schedule in the Agreement.

12.  The Agreement further provided that should defendant not provide the installment payments to plaintiff as set forth in the

Schedule of the Agreement, the amount owed on the Accounts would revert to the sum of $510,459.15, less any installment payment tendered by defendant to plaintiff in accordance with the Agreement.

13.  On or about November 3, 2025, defendant began to make installment payments to plaintiff in accordance with the Agreement.

14.  As of the filing of this action, defendant only provided five (5) installment payments, totaling $98,082.15, to plaintiff, in violation of the Agreement.

15.  Plaintiff has demanded, and has continued to demand, that defendant comply with the Agreement.

16.  Specifically, and in accordance with the Agreement, plaintiff, through appointed counsel, tendered two (2) Notices of Default and Demands to Cure to defendant, true and correct copes of which are attached hereto, made a part hereof, and collectively marked as Exhibit B.

17.  The initial date of the default was January 23, 2026.

18.  Notwithstanding the tender of the Notices of Default and Demands to Cure, defendant has not provided any further installment payments to plaintiff.

19.  Pursuant to the Agreement, and as a result of defendant's failure to provide the installment payments to plaintiff by the

4

dates set forth in the Schedule in the Agreement, defendant is in default of the terms of the Agreement.

20. As a result of the occurrence of the default, and in furtherance of plaintiff's tender of the Notices of Default and Demands to Cure, the amounts owed on the Accounts has reverted to the sum of $510,459.15, less the application of the installment payments of $98,082.15 to said outstanding sum.

21. Based upon the foregoing matters and in accordance with the Agreement, plaintiff is owed the sum of $412,377.00 by defendant on the Accounts.

22. As a result of the occurrence of the default, and as set forth in the Agreement, plaintiff is entitled to interest of 1½ percent per month, from the date of the initial default, being January 23, 2026, through the date of the entry of judgment, on the sum of $412,377.00.

23. As a further result of the occurrence of the default, and as set forth in the Agreement, plaintiff is entitled to an award of reasonable attorneys' fees and costs incurred in the enforcement of the payment obligations set forth in the Agreement, in the enforcement of the Agreement, and the preparation and filing of a motion for entry of judgment.

24. Plaintiff has performed all conditions, covenants and promises required on its part to be performed in accordance with the Agreement.

## COUNT I - BREACH OF CONTRACT

25.  Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 24 of the preceding sections as if fully set forth at length herein.

26.  The Parties entered into the Agreement to provide time for defendant to satisfy the amounts owed to plaintiff on the Accounts.

27.  Defendant breached the Agreement by failing to provide the installment payments to plaintiff in accordance with the Schedule in the Agreement.

28.  Defendant further breached the Agreement by failing to provide the outstanding installment payments after its receipt of the Notices of Default and Demands to Cure.

29.  As a direct and proximate result of defendant's breaches of the Agreement, plaintiff has suffered, and will continue to suffer, damages.

WHEREFORE, plaintiff, Stenn Direct Funding Designated Activity Company, demands judgment in its favor and against defendant, NPC Global Corporation, for $412,377.00, together with contractually obligated interest of 1½ percent per month on said sum from January 23, 2026 through the date of entry of judgment, attorneys' fees, costs and such other relief that this Honorable Court deems just and appropriate under the circumstances.

## COUNT II – UNJUST ENRICHMENT

30. Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 29 of the preceding sections as if fully set forth at length herein.

31. Defendant received certain goods and materials from a third party which are the subject of the Accounts.

32. Plaintiff, as lawful purchaser and assignee, is the lawful owner and holder of the Accounts.

33. As a result of defendant's failure to satisfy the Accounts and to comply with the payment terms of the Agreement, defendant has been unjustly enriched, to the detriment of plaintiff.

WHEREFORE, plaintiff, Stenn Direct Funding Designated Activity Company, demands judgment in its favor and against defendant, NPC Global Corporation, for $412,377.00, together with contractually obligated interest of 1½ percent per month on said sum from January 23, 2026 through the date of entry of judgment, attorneys' fees, costs and such other relief that this Honorable Court deems just and appropriate under the circumstances.

7

GEORGE N. STYLIADES


/s/ George N. Styliades
George N. Styliades
Attorney for Plaintiff

P.O. Box 9
Moorestown, NJ 08057-0009
(856) 482-8877
gstyliades@styliadeslaw.com


Date: March 16, 2026

# EXHIBIT A

## AGREEMENT

**THIS AGREEMENT** (this "Agreement") is entered into as of October 30, 2025

**BETWEEN:**

(1) **NPC GLOBAL CORPORATION**, a corporation organized and existing under the laws of the State of New Jersey with its principal address at 100 Middlesex Avenue, Suite 2, Carteret, New Jersey, 07008, United States of America, bearing entity ID 0100898278 ("**NPC**"); and

(2) **STENN DIRECT FUNDING DESIGNATED ACTIVITY COMPANY**, a designated activity company limited by shares duly incorporated under the laws of Ireland with registered address Ground Floor, Two Dockland Central, Guild Street, North Dock, Dublin, Dublin 1, D01 K2C5, Ireland and registered number 662471 ("**SDF**");

each a "**Party**" and together the "**Parties**".

**WHEREAS:**

(A) SDF is in the business of receivables finance and factoring. Pursuant to framework agreements entered into from time to time between suppliers of goods and services and SDF, such suppliers sold to SDF and SDF purchased from such suppliers from time to time all of the relevant supplier's right, title, benefit and interest in, to and under certain accounts receivable owed to that supplier by certain of its customers, including without limitation, all rights to receive and obtain payment in respect of the accounts receivable including rights of enforcement.

(B) Pursuant to particular arrangements for the purchase of certain accounts receivable entered into between SDF and Dongguan Taihong Packaging Co., Limited ("**Dongguan**"), SDF purchased certain accounts receivable owed by NPC to Dongguan (as more particularly described below in the definition of NPC Accounts Receivable set out in Paragraph 2 of this Agreement);

(C) NPC has made payments to SDF towards the satisfaction of the NPC Accounts

(D) NPC is now overdue on its payment obligations to SDF under the NPC Accounts Receivable.

(E) NPC desires to consolidate the amounts owed to SDF pursuant to the NPC Accounts Receivable into a single debt and enter into a payment plan with SDF to discharge that debt in full by payment in scheduled installments.

**THE PARTIES AGREE** as follows:

1. **Incorporation of Whereas Clauses**

The Parties incorporate the foregoing Whereas clauses as if more fully set forth at length herein.

2. **Certain Defined Terms**

In this Agreement:

1

"**Business Day**" means a day (other than a Saturday or Sunday) on which banks and other financial institutions are open for general business in New York, New York;

"**Final Repayment Date**" means the date on which all amounts owing by the NPC under this Agreement have been unconditionally discharged in full;

"**Outstanding Amount**" means the principal amount outstanding for the time being of the Restructured Debt;

"**NPC Accounts Receivable**" means the following accounts receivable owed by NPC and purchased by SDF:

| Invoice ID | Supplier | Issue Date | Due Date | Receivable Amount (USD) |
|---|---|---|---|---|
| SL2408005 | Dongguan | 8/4/24 | 12/2/24 | 40,594.30 |
| SL2408013 | Dongguan | 8/8/24 | 12/6/24 | 43,956.23 |
| SL2409013 | Dongguan | 9/7/24 | 1/5/25 | 34,730.41 |
| SL2409025 | Dongguan | 9/18/24 | 1/16/25 | 40,247.74 |
| SL2409037 | Dongguan | 9/24/24 | 1/22/25 | 39,669.50 |
| SL2409038 | Dongguan | 9/25/24 | 1/23/25 | 37,085.76 |
| SL2409040 | Dongguan | 9/26/24 | 1/24/25 | 34,725.69 |
| SL2409039 | Dongguan | 9/26/24 | 1/24/25 | 40,567.16 |
| SL2409044 | Dongguan | 9/30/24 | 1/28/25 | 31,914.47 |
| SL2410011 | Dongguan | 10/12/24 | 2/9/25 | 53,803.48 |
| SL2410010 | Dongguan | 10/12/24 | 2/9/25 | 35,322.92 |
| SL2410013 | Dongguan | 10/15/24 | 2/12/25 | 40,776.46 |
| SL2410018 | Dongguan | 10/19/24 | 2/16/25 | 37,065.03 |
| | | | | |
| | | | TOTAL | 510,459.15 |

"**Restructured Debt**" has the meaning given to that term in Paragraph 3 (*Acknowledgment of Existing Debt*);

3.  **Acknowledgment of Existing Debt**

    **3.1  Total Amount Outstanding**

    NPC hereby declares and acknowledges that as of the date of this Agreement it owes to SDF in aggregate an amount equal to USD 510,459.15 (the "**Total Outstanding**") in respect of the amounts remaining unpaid and outstanding under the NPC Accounts Receivable.

    **3.2    Consolidation of Amounts Outstanding**

    The Parties acknowledge and agree that notwithstanding the individual terms applicable to each of the NPC Accounts Receivable set out in the table contained in the definition of NPC Accounts Receivable (the "**Original Receivable Terms**"), the aggregate amount remaining unpaid and outstanding of each of the NPC Accounts Receivable shall be consolidated and treated as of the date of this Agreement as a single debt owed by NPC to SDF in a principal amount equal to the

2

Total Outstanding and subject to the terms of this Agreement (the "**Restructured Debt**").

### 3.3    Conditional Discount of the Restructured Debt

Notwithstanding the Parties acknowledge and agree that the Outstanding Amount as at the date of this Agreement is equal to the Total Outstanding, provided that NPC performs all of its obligations under this Agreement in full and at the times prescribed by this Agreement, and in consideration of such performance, SDF agrees that the Outstanding Amount, as at the date of this Agreement, shall be discounted and deemed equal to USD 470,794.49.  SDF agrees that provided NPC makes payment of each installment required to be provided by NPC pursuant to Paragraph 4.1 (*Payment of Regular Installments*) herein on the date set forth for the payment of such installment in the Schedule to this Agreement, upon receipt by SDF on the due date of the final installment due to be paid by NPC on or before October 15, 2026, the Total Outstanding shall be deemed satisfied in full. However, and as is noted in Paragraph 6 herein, if at any time NPC is in default of its obligations under this Agreement, SDF shall be entitled to claim from NPC the full undiscounted amount of the Total Outstanding (together with interest due thereon in accordance with the terms of this Agreement) less any payments actually received by SDF from NPC for application towards discharge of the Restructured Debt from the date of this Agreement up to and including the date of such default.

### 4.    Repayment of the Restructured Debt

#### 4.1    Payment of Regular Installments

NPC shall pay the Outstanding Amount to SDF in installments on the dates and in the amount set out opposite each such date as set out in the Schedule to this Agreement annexed as Exhibit A hereto.  Time is of the essence of NPC's payment obligations under this Agreement.

#### 4.2    Voluntary Prepayment

At any time while not in default under this Agreement, NPC may pay, in full or in part, the Outstanding Amount to SDF without further bonus or penalty, but if in full such payment must include all accrued and unpaid interest (if any) up to the date of such payment.

#### 4.3    Application of Payments

Any payment made by NPC towards discharge of the Outstanding Amount under this paragraph shall operate to reduce the Outstanding Amount in the amount of such payment immediately upon receipt by, or on behalf of, SDF.

### 5.    Representations

NPC represents and warrants to SDF that:

(a)    it is duly incorporated and validly existing under the laws of the State of New Jersey;

(b)    it has the capacity:

    (i)    to carry on its business, and it has obtained and maintained all authorisations, approvals, consents, agreement, licences, exemptions and registrations thereof as required for it to perform its business; and

    (ii)    to enter into and perform its obligations under this Agreement;

(c)    the execution, delivery and performance by it of this Agreement have been duly authorised by all necessary corporate action;

(d)    its obligations under this Agreement are binding on it and are enforceable in accordance with their terms and

(e)    there are no insolvency, dissolution and/or bankruptcy proceedings which are pending before any federal and/or state court, tribunal and/or administrative agency or division.

6.    **Default**

Notwithstanding anything to the contrary in this Agreement, if NPC fails to make payment to SDF in accordance with this Agreement for more than five (5) days after the installment payment due date, NPC shall be in default of the terms of this Agreement ("a **Default**").   In the event of the occurrence of a Default, but subject in all cases to the notice and cure provisions set forth in Paragraph 7 below, SDF shall be entitled to file legal action against NPC for the amount of USD 510,459.15, plus interest at a rate of one-and one-half percent (1.5%) per month from the date of the occurrence of a Default under this Agreement through the date of the entry of judgment, together with an award of reasonable attorneys' fees and costs incurred in the enforcement of the payment obligations set forth herein, enforcing this Agreement, and/or making a motion to the Court for entry of judgment, less any sums actually paid, tendered or otherwise provided by NPC to SDF pursuant to the terms of this Agreement.

7.    **Notice of a Default and the Opportunity to Cure a Default**

Upon the occurrence of a Default,  NPC shall have five (5) business days from the date of m████████d emailing of SDF's notice  and demand to cure such a Default to NPC by email only by SDF to NPC at jschlesinger@npcglobal.com, copied to s.kaplitt@epsteinostrove.com. After a notice of Default has been provided by SDF on two (2) occasions, SDF shall have no further obligation to provide a notice of Default to NPC before the filing of legal action as noted in Paragraph 6 hereinabove and this paragraph shall no longer have any force or effect. After notice of a Default has been given to NPC and while an opportunity to cure the payment Default is continuing, NPC shall make payment to SDF only by ACH or wire transfer in accordance with payment instructions given by SDF. Any such Default shall be deemed cured upon receipt of the installment payment by SDF, and the clearance of said payment, of the delinquent amounts then due and owing by NPC.

4

## 8. Miscellaneous

### 8.1 Payments

(a) On each date on which any Party is required to make a payment under this Agreement, that Party shall make the same available to the Party to whom that payment is to be made for value on the due date to such bank account as the receiving Party may notify to the paying Party for such purpose.

(b) If any day on which a Party is due to make a payment under this Agreement is not a Business Day, then such payment shall be made on the immediately succeeding Business Day.

(c) NPC will pay all amounts payable under this Agreement without any set-off, counterclaim or deduction whatsoever unless required by law.

### 8.2 Calculations and Determinations

Any calculation or determination by SDF of a rate or amount under this Agreement is, in the absence of manifest error, bad faith or wilful error, conclusive evidence of the matters to which it relates.

### 8.3 Amendments and Waivers

Any amendment, variation, modification or waiver of any term or condition of this Agreement must be in writing and signed by each of the Parties.

### 8.4 Limited recourse and non-petition

Notwithstanding anything to the contrary herein or otherwise, NPC hereby acknowledges and agrees that any debts, liabilities or obligations of SDF hereunder shall be limited to the unsecured assets of SDF (the "**Assets**"). If the net proceeds of realisation of the Assets are less than the aggregate amount payable by SDF in respect of any debts, liabilities and obligations hereunder (such negative amount being referred to herein as a "**shortfall**"), the obligations of SDF in respect of this Agreement in such circumstances shall be limited to such net proceeds and NPC shall take no further action against SDF in respect of such shortfall (including, without limitation, instituting any bankruptcy, insolvency, examinership or other analogous proceedings under the laws of any jurisdiction against SDF, or any officers, directors or shareholders of SDF; it being expressly understood and agreed that the provisions of this Agreement are corporate obligations of SDF only). The provisions of this subparagraph shall survive the expiration or termination of this Agreement.

### 8.5 Assignment

NPC will neither transfer nor assign its rights or obligations under this Agreement to any person or entity. SDF may assign and/or transfer any of its rights and obligations hereunder (including by way of declaration of trust), and such assignment and/or transfer shall be binding upon NPC, to the benefit of the successors, licensees and/or assignees of SDF, as the case may be.

5

### 8.6 Governing Law, Jurisdiction and Venue

This Agreement shall be governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the laws of the State of New Jersey, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of New Jersey. Each party agrees to the exclusive jurisdiction of the Superior Court of New Jersey in Middlesex County or the United States District Court for the District of New Jersey with respect to this Agreement and/or to any claim, dispute or controversy in any way arising out of or relating to this Agreement. Each party waives, and agrees not to assert as a defense in any action, suit or proceedings in which any such claim is made, that such party is not subject to such noted courts or that such action, suit or proceedings may not be brought or is not maintainable in such courts or that the venue thereof may not be appropriate or that this Agreement may not be enforced in or by such courts.

### 8.7 Illegality and Severability

Should any provision of this Agreement be held by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, such provision shall be of no force and effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality and enforceability, of the remaining portions of this Agreement, which will remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the Parties. Notwithstanding the foregoing, upon any finding by any court of competent jurisdiction that any provision provided for in this Agreement is illegal, void, or unenforceable, each Party agrees, promptly upon the request of the other Party, to execute an Agreement that is legal and enforceable.

### 8.8 Counterparts

This Agreement may be executed in any number of counterparts, and this has the same effect as if the signatures on the counterparts were on a single copy of this Agreement.

### 8.9 Who is Bound

The Parties are bound by this Agreement. Anyone who succeeds to each Party's rights and responsibilities, such as successors-in-interest and assigns, are also bound. This Agreement is made for the benefit of each Party and all who success to their rights and responsibilities, such as successors-in-interest and/or assigns.

### 8.10 Further Assurances and Surviving Obligations

The Parties agree to cooperate, execute, and deliver such additional agreements, amendments, documents, and instruments, and to perform such further acts as may be reasonably required to effectuate the intent of this Agreement. From time to time, upon request, the Parties will, without further consideration, promptly execute, deliver,

6

acknowledge and/or file all such further documents, agreements, certificates and/or instruments and to do such further acts as the entities entitled to the benefit of this Agreement may reasonably require evidencing or effectuating the transactions contemplated by this Agreement.

### 8.11  Signatures

Delivery of an executed signature page of this Agreement by electronic transmission (in PDF format) shall be effective as delivery of a manually executed counterpart hereof.  Any signature (including, without limitation, (x) any electronic symbol or process attached to, or associated with, a contract or other record an adopted by a person with the intent to sign, authenticate or accept such contract or record and (y) any pdf signature) hereto shall have the same legal validity and enforceability as a manually executed signature or use of a paper-based record-keeping system to the fullest extent permitted by applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, or any similar state law based on the Uniform Electronic Transactions Act, and the Parties hereby waive any objection to the contrary.

### 8.12  Authority to Sign

The persons signing this Agreement represent and warrant that they have been duly authorized to sign this Agreement on behalf of the entities on whose behalf they are signing and that they are signing in all capacities voluntarily without coercion, duress, or undue influence.

### 8.13  Entire Agreement

This Agreement shall become effective immediately upon execution. The Parties acknowledge and agree that this Agreement constitutes the entire agreement between them except as otherwise stated.  It is expressly understood and agreed that there have been no promises, agreements, warranties, or inducements not herein expressed, made to any of the Parties.  The Parties acknowledge that they have read this Agreement and are executing it without relying upon any statements, representations, or warranties, written or oral, which are not expressly set forth herein.

### 8.14  Construction

The Parties have had a full opportunity to participate in the drafting of this Agreement.  Accordingly, the general rule of construction to the effect that any ambiguities in a contract are to be resolved against the party drafting the contract shall not be employed in the construction and interpretation of this Agreement.

### 8.15  No One Drafter

This Agreement accurately describes the terms agreed upon between the Parties, each of whom had input into its drafting, and, as such, it shall be construed as if it was jointly drafted by all of the Parties, and no uncertainty or ambiguity shall be construed against either of the Parties as the drafter.

### 8.16  Time of the Essence

Time of the essence is required in the performance of this Agreement, including its payment obligations.  NPC waives any right to cure a Default except in strict

7

accordance with the terms set forth in *Paragraph 7 herein* and acknowledges that SDF's agreement to accept the settlement amount of USD 470,794.49 in satisfaction of its claims is expressly conditioned upon full and prompt payment of said amount in accordance with the terms of this Agreement.

### 8.17    Captions

The captions of this Agreement are for convenience only and are not part of this Agreement and do not in any way limit or amplify the terms and provisions of this Agreement and shall have no effect on its interpretation.

**THIS AGREEMENT, being nine (9) ~~ten (10)~~ pages in length, has been entered into as of the date stated at the beginning of this Agreement, and the Parties consent to the form and entry of this Agreement.**

**IT IS SO AGREED.**

**NPC**

NPC GLOBAL CORPORATION

By: ███████████

Name: Juda Schlesinger

Title: President / CEO

**SDF**

STENN DIRECT FUNDING DESIGNATED ACTIVITY COMPANY

By: ███████████

Name: Aileen Mannion

Title: Director

8

**EXHIBIT "A" - THE SCHEDULE**

| Installment Payment Date | Installment Amount (USD) | Outstanding Amount after application of Installment Amount (USD)* |
|---|---|---|
| Date of this Agreement | 0.00 | 470,794.49 |
| 11/03/25 | 19,616.43 | 451,178.06 |
| 11/15/25 | 19,616.43 | 431,561.63 |
| 12/01/25 | 19,616.43 | 411,945.20 |
| 12/15/25 | 19,616.43 | 392,328.77 |
| 1/01/25 | 19,616.43 | 372,712.34 |
| 1/15/25 | 19,616.43 | 353,095.91 |
| 2/01/25 | 19,616.43 | 333,479.48 |
| 2/25/25 | 19,616.43 | 313,863.05 |
| 03/01/26 | 19,616.43 | 294,246.62 |
| 03/15/26 | 19,616.43 | 274,630.19 |
| 04/01/26 | 19,616.43 | 255,013.76 |
| 04/15/26 | 19,616.43 | 235,397.33 |
| 05/01/26 | 19,616.43 | 215,780.90 |
| 05/15/26 | 19,616.43 | 196,164.47 |
| 06/01/26 | 19,616.43 | 176,548.04 |
| 06/15/26 | 19,616.43 | 156,931.61 |
| 07/01/26 | 19,616.43 | 137,315.18 |
| 07/15/26 | 19,616.43 | 117,698.75 |
| 08/01/26 | 19,616.43 | 98,082.32 |
| 08/15/26 | 19,616.43 | 78,465.89 |
| 09/01/26 | 19,616.43 | 58,849.46 |
| 09/15/26 | 19,616.43 | 39,233.03 |
| 10/01/26 | 19,616.43 | 19,616.60 |
| 10/15/26 | 19,616.43 | 0.00 |

* Outstanding Amount subject to the conditions of Clause 2.3

9

# EXHIBIT B

LAW OFFICES
## GEORGE N. STYLIADES
SUITE 105
214 WEST MAIN STREET
MOORESTOWN, NEW JERSEY 08057-2345
(856) 482-8877
FACSIMILE (856) 482-6936

MEMBER OF NJ & PA BARS
NJ ID NO. 016361989
GSTYLIADES@STYLIADESLAW.COM

PENNSYLVANIA OFFICE
42 COPLEY ROAD
UPPER DARBY, PA 19082
(610) 352-1200
FACSIMILE (610) 352-5980

January 22, 2026

## NOTICE OF DEFAULT AND DEMAND TO CURE

**VIA EMAIL**

**EMAIL - jschlesinger@npcglobal.com**

Mr. Judah Schlesinger
President/CEO
NPC GLOBAL CORPORATION
100 Middlesex Avenue, Suite 2
Carteret, NJ 07008

Re:   Stenn Direct Funding Designated Activity Company
Our File No.: 3509-003
=================================================

Dear Mr. Schlesinger:

I represent Stenn Direct Funding Designated Activity Company ("SDF").

SDF informed me that, pursuant to the Agreement dated October 30, 2025 ("the Agreement"), the installment payment for December 15, 2025, for the sum of $19,616.43, and the installment payment for January 15, 2026, for the sum of $19,616.43, remain due and owing, despite demands for payment provided by SDF's appointed representative, Brevant Capital.

Based upon the aforesaid matter, you are now in default of the installment payment obligations as set forth in Paragraph 4 of the Agreement.

In accordance with Paragraph 7 of the Agreement, you have five (5) business days from the date of the emailing of this notice and demand to cure to provide payment of $39,232.86 to SDF.

## NOTICE OF DEFAULT AND DEMAND TO CURE

**VIA EMAIL**

Mr. Judah Schlesinger
President/CEO
NPC GLOBAL CORPORATION
January 22, 2026
Page Two
========================

       Absent my client's receipt of the aforesaid sum by January 29, 2026, you will be in default of the payment obligations under the Agreement and my client will seek, without further notice, judicial relief as noted in Paragraph 6 of the Agreement.

       Your right to cure this default, as provided in this notice, is independent of any right or remedy under common law, principles of equity, state or federal statute, or rule of court.

Very truly yours,

/s/ George N. Styliades
George N. Styliades

GNS/sn
cc:  Stephen B. Kaplitt, Esquire
     (via email)

2

**LAW OFFICES**
**GEORGE N. STYLIADES**
**P.O. Box 9**
Moorestown, New Jersey 08057-0009
(856) 482-8877
GSTYLIADES@STYLIADESLAW.COM

Member of NJ & PA Bars
NJ ID No. 016361989
PA ID No. 56606

February 12, 2026

## 2nd NOTICE OF DEFAULT AND DEMAND TO CURE

**VIA EMAIL**

**EMAIL - jschlesinger@npcglobal.com**

Mr. Judah Schlesinger
President/CEO
NPC GLOBAL CORPORATION
100 Middlesex Avenue, Suite 2
Carteret, NJ 07008

Re: Stenn Direct Funding Designated Activity Company
Our File No.: 3509-003
================================================

Dear Mr. Schlesinger:

As you are aware, I represent Stenn Direct Funding Designated Activity Company ("SDF").

SDF informed me that, pursuant to the Agreement dated October 30, 2025 ("the Agreement"), the installment payment for January 15, 2026, for the sum of $19,616.43, and the installment payment for February 1, 2026, for the sum of $19,616.43, remain due and owing, despite demands for payment provided by me and SDF's appointed representative, Brevant Capital.

Based upon the aforesaid matter, you are now, and continue to be, in default of the installment payment obligations as set forth in Paragraph 4 of the Agreement.

In accordance with Paragraph 7 of the Agreement, you have five (5) business days from the date of the emailing of this notice and demand to cure to provide payment of $39,232.86 to SDF.

This notice is the second one to be provided to you, pursuant to Paragraph 7 of the Agreement. SDF shall have no further obligation to provide such notice to NPC.

.

## 2ⁿᵈ NOTICE OF DEFAULT AND DEMAND TO CURE

**VIA EMAIL**

Mr. Judah Schlesinger
President/CEO
NPC GLOBAL CORPORATION
February 12, 2026
Page Two
======================

        Absent my client's receipt of the aforesaid sum by the close of business on Friday, February 20, 2026, you will be in default of the payment obligations under the Agreement and my client will seek, without further notice, judicial relief as noted in Paragraph 6 of the Agreement.

        Your right to cure this second default, as provided in this notice, is independent of any right or remedy under common law, principles of equity, state or federal statute, or rule of court.

                              Very truly yours,


                              /s/ George N. Styliades
                              George N. Styliades


GNS/sn
cc:  Stephen B. Kaplitt, Esquire
     (via email)

2